No. 14-1691

# United States Court of Appeals
# For the First Circuit

---

IN RE: ROBERT E. MURPHY
Debtor

--------------------------------------------

ROBERT E. MURPHY
Appellant

v.

US DEPARTMENT OF EDUCATION;
EDUCATIONAL CREDIT MANAGEMENT CORPORATION
Appellees

SALLIE MAE, INC.; COLLEGE BOARD
Interested Parties

---

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

## SUPPLEMENTAL BRIEF OF BROWN RUDNICK LLP AS PRO BONO COUNSEL TO PLAINTIFF-APPELLANT ROBERT E. MURPHY

Steven D. Pohl, Esq. (Bar #73801)
Brown Rudnick LLP
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
spohl@brownrudnick.com

Dated: July 22, 2015

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

STATEMENT OF THE ISSUES...........................................................1

STANDARD OF REVIEW ..................................................................2

STATEMENT OF THE FACTS ............................................................2

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT ...................................................................................5

    I.    THE BANKRUPTCY COURT ERRED BY REQUIRING
        MURPHY TO SHOW "TRULY EXCEPTIONAL
        CIRCUMSTANCES" TO ESTABLISH AN UNDUE
        HARDSHIP. ...........................................................................5

    II.    THE BANKRUPTCY COURT ERRED BY IN EFFECT
        IMPROPERLY SUBJECTING MURPHY TO THE
        BRUNNER TEST. ....................................................................9

        A.    Brunner's Additional Requirements Do Not Track the
                Statute and are Otherwise Problematic. ....................................10

        B.    Brunner Does Not Reflect Subsequent Changes in the
                Statute and Loan-Forgiveness Practices. ..................................12

        C.    The Totality Test is Superior. ..................................................16

        D.    The Court Should Clarify that Brunner Does Not Apply
                Within This Circuit. ...............................................................17

    III.    THE BANKRUPTCY COURT ERRED IN FINDING THAT
        MURPHY HAS NOT DEMONSTRATED UNDUE
        HARDSHIP. ...........................................................................19

A.     Murphy Has Satisfied His Burden Of Proof To Demonstrate Undue Hardship Under the Totality Test. ...........19

        1.     Past, Present, and Reasonably Reliable Future Financial Resources. .......................................................19

        2.     Reasonably Necessary Living Expenses. .......................22

        3.     Other Relevant Facts and Circumstances. ......................23

B.     Murphy Also Satisfies The <u>Brunner</u> Test For Undue Hardship ....................................................................28

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**U.S. BANKRUPTCY COURT CASES:**

<u>Bourque v. Educ. Credit Mgmt. Corp. (In re Bourque)</u>,
    303 B.R. 548 (Bankr. D. Mass. 2003) ...........................................................18

<u>Brunell v. Citibank (S.D.) N.A. (In re Brunell)</u>,
    356 B.R. 567 (Bankr. D. Mass. 2006) ...........................................................18

<u>Crowley v. U.S. Dep't of Educ. (In re Crowley)</u>,
    259 B.R. 361 (Bankr. W.D. Mo. 2001) .........................................................17

<u>Dolan v. Am. Student Assist. (In re Dolan)</u>,
    256 B.R. 230 (Bankr. D. Mass. 2000) ...........................................................18

<u>Fahrenz v. Educ. Credit Mgmt. Corp. (In re Fahrenz)</u>,
    2008 WL 4330312 (Bankr. D. Mass. Sept.17, 2008) ..............................18, 26

<u>Fox v. Pa. Higher Educ. Assistance Agency (In re Fox)</u>,
    163 B.R. 975 (Bankr. M.D. Pa. 1993) ...........................................................13

<u>Gallagher v. Educ. Credit Mgmt. Corp. (In re Gallagher)</u>,
    333 B.R. 169 (Bankr. D.N.H. 2005) ..............................................................18

<u>Garrett v. N.H. Higher Educ. Assistance Found. (In re Garrett)</u>,
    180 B.R. 358 (Bankr. D.N.H. 1995) ..............................................................18

<u>Gharavi v. U.S. Dep't of Educ. (In re Gharavi)</u>,
    335 B.R. 492 (Bankr. D. Mass. 2006) ...........................................................18

<u>Grigas v. Sallie Mae Serving Corp. (In re Grigas)</u>,
    252 B.R. 866 (Bankr. D.N.H. 2000) ..............................................................18

<u>Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks)</u>,
    331 B.R. 18  (Bankr. D. Mass. 2005) ....................................................*passim*

<u>In re Ablavsky</u>,
    504 B.R. 709 (Bankr. D. Mass. 2014) ...........................................................26

In re Alderete,
    308 B.R. 495 (B.A.P. 10th Cir. 2004) ..........................................................26

In re Andresen,
    232 B.R. 127 (B.A.P. 8th Cir. 1999) ............................................................17

In re Ayele,
    468 B.R. 24 (Bankr. D. Mass. 2012) .............................................................9

In re Birrane,
    287 B.R. 490 (B.A.P. 9th Cir. 2002) ............................................................31

In re Bronsdon,
    No. 07-14215, 2010 WL 147798 (Bankr. D. Mass. 2010)............................26

In re Brown,
    378 B.R. 623 (Bankr. W.D. Mo. 2007) ........................................................26

In re Brown, No. 05-4470,
    2007 WL 1747135 (Bankr. N.D. W. Va. June 15, 2007)....................... 29-30

In re Brunner,
    46 B.R. 752 (S.D.N.Y. 1985) ......................................................................14

In re Burkhead,
    304 B.R. 560 (Bankr. D. Mass. 2004) ..........................................................22

In re DeGroot,
    339 B.R. 201 (D. Or. 2006) .........................................................................31

In re Ford,
    269 B.R. 673 (B.A.P. 8th Cir. 2001) ............................................................26

In re Gordon, No. 07-68049,
    2008 WL 51597838 (Bankr. N.D. Ga. Oct. 10, 2008) ..................................27

In re Green, No. 05-11461,
    2006 WL 2061494 (Bankr. D. Mass. July 24, 2006) ....................................27

In re Hamilton,
    361 B.R. 532 (Bankr. D. Mont. 2007)...........................................................27

In re Johnson,
    218 B.R. 449 (B.A.P. 8th Cir. 1998) ..............................................................6

In re Jorgensen,
    479 B.R. 79 (B.A.P. 9th Cir. 2012) ..............................................................31

In re Korhonen,
    296 B.R. 492 (Bankr. D. Minn. 2003)...........................................................25

In re Lohman,
    9 B.R. 576 (Bankr. D. Vt. 1987)...............................................................9, 16

In re Mitcham,
    293 B.R. 138 (Bankr. N.D. Ohio 2003)........................................................28

In re Neeson,
    No. 07-20604, 2008 WL 379699 (Bankr. W.D. Mo. Feb. 12, 2008)............28

In re Savage,
    311 B.R. 835 (B.A.P. 1st Cir. 2004)..............................................................17

In re Smith,
    499 B.R. 55 (Bankr. D. Mass. 2013) .............................................................25

In re Stebbins-Hopf,
    176 B.R. 784 (Bankr. W.D. Tex. 1994) ........................................................14

In re Stevenson,
    463 B.R. 586 (Bankr. D. Mass. 2011) .............................................................8

In re Williams,
    301 B.R. 62 (Bankr. N.D. Cal. 2003)............................................................27

In re Young,
    225 B.R. 312 (Bankr. E.D. Pa. 1998) ...........................................................30

Kopf v. U.S. Dep't of Educ. (In re Kopf),
    245 B.R. 731 (Bankr. D. Me. 2000) ..............................................8, 12, 18, 19

Lamanna v. EFS Servs., Inc. (In re Lamanna),
    285 B.R. 347 (Bankr. D.R.I. 2002) ..............................................................18

Law v. Educ. Res. Inst., Inc. (In re Law),
    159 B.R. 287 (Bankr. D.S.D. 1993) ............................................................17

Paul v. Suffolk Univ. (In re Paul),
    337 B.R. 730 (Bankr. D. Mass. 2006) ........................................................18

Phelps v. Sallie Mae Loan Serv. Ctr. (In re Phelps),
    237 B.R. 527 (Bankr. D.R.I. 1999) .......................................................17, 18

Robinson v. Educ. Credit Mgmt. Corp. (In re Robinson),
    416 B.R. 275 (Bankr. E.D. Va. 2009) .........................................................14

Sanborn v. Educ. Credit Mgmt. Corp. (In re Sanborn),
    431 B.R. 5 (Bankr. D. Mass. 2010) .............................................................17

Taratuska v. Educ. Res. Inst., Inc. (In re Taratuska),
    No. 01-10361, 2010 WL 583952 (Bankr. D. Mass. Feb.12, 2010)......... 17-18

**U.S. SUPREME COURT CASES:**

Ohio v. Roberts,
    448 U.S. 56 (1980).......................................................................................26

Crawford v. Washington,
    541 U.S. 36 (2004).......................................................................................26

## U.S. CIRCUIT COURT OF APPEALS CASES:

Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews),
    661 F.2d 702 (8th Cir. 1981) ..........................................................16

Brunner v. N.Y. State Higher Educ. Servs. Corp.,
    831 F.2d 395 (2d Cir. 1987) ....................................................*passim*

Educ. Credit Mgmt. Corp. v. Jesperson,
    571 F.3d 775 (8th Cir. 2009) ........................................................12

Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko),
    515 F.3d 319 (4th Cir. 2008) ..........................................................2

Educ. Credit Mgmt. Corp. v. Polleys (In re ),
    356 F.3d 1302 (10th Cir. 2004) ....................................................31

Goulet v. Educ. Credit Mgmt. Corp.,
    284 F.3d 773 (7th Cir. 2002) ........................................................11

In re Brightful,
    267 F.3d 324 (3d Cir. 2001) ......................................................2, 12

In re Frushour,
    433 F.3d 393 (4th Cir. 2005) ........................................................29

In re Mason,
    464 F.3d 878 (9th Cir. 2006) ........................................................30

In re Merchant,
    958 F.2d 738 (6th Cir. 1992) ..........................................................6

In re Nys,
    446 F.3d 938 (9th Cir. 2006) ........................................................29

In re Oyler,
    397 F.3d 382 (6th Cir. 2005) ........................................................29

In re Pelkowski,
    990 F.2d 737 (3d Cir. 1993) ......................................................6, 13

In re Spence,
    541 F.3d 538 (4th Cir. 2008) ...........................................................29

Krieger v. Educ. Credit Mgmt. Corp.,
    713 F.3d 882 (7th Cir. 2013) ...................................................11, 30

Long v. Educ. Credit Mgmt. Corp. (In re Long),
    322 F.3d 549 (8th Cir. 2003) .......................... 16, 17, 23, 26, 27-28

TI Fed. Credit Union v. DelBonis,
    72 F.3d 921 (1st Cir. 1995)...................................................2, 5, 8, 9

United Student Aid Funds, Inc. v. Pena,
    155 F.3d 1108 (9th Cir. 1998) ................................................28, 29

## U.S. DISTRICT COURT CASES:

In re Bronsdon,
    435 B.R. 791 (B.A.P. 1st Cir. 2010)......................................*passim*

In re Kelly,
    312 B.R. 200 (B.A.P. 1st Cir. 2004)..............................................2

In re Roth,
    490 B.R. 908 (B.A.P. 9th Cir. 2013) ..................................... 13, 15, 26, 31-32

Murphy v. Educ. Credit Mgmt. Corp.,
    511 B.R. 1 (D. Mass. 2014)...........................................................2

CONSTITUTIONAL PROVISIONS AND STATUTES:

11 U.S.C. § 523(a)(8) .......................................................................*passim*

26 U.S.C. § 61 ...........................................................................................26

34 C.F.R. 685.209(a)(c)(ii)(B)(iv) ...........................................................25

34 C.F.R. 685.209(a)(c)(4) .......................................................................25

34 C.F.R. 685, §§ 685.100–685.402 .........................................................25

OTHER AUTHORITIES:

124 Cong. Rec. H. 11096, 95th Cong., 2d Sess., at 140
    (daily ed. Sept. 28, 1978) ..................................................................13

Commission Report, House Doc. No. 93-137, Pt. 1, 93rd Cong., 1st Sess.
    (1973) at 140 .....................................................................................14

BLACK'S LAW DICTIONARY 1759 (10th ed. 2014) ....................................11

## INTRODUCTION

This Supplemental Brief is submitted on behalf of Appellant Robert E. Murphy.  Initial briefing by Murphy and Appellee Educational Credit Management Corporation was submitted to this Court on September 22, 2014, and November 21, 2014, respectively.   On December 17, 2014, Appellant filed a Reply Brief. Subsequently, the Court invited *amicus* briefs and suggested that Murphy associate with *pro bono* counsel.  Murphy chose to associate with Steven D. Pohl of Brown Rudnick LLP and on June 9, 2015, the Court entered an order appointing Mr. Pohl to represent Murphy and established a supplemental briefing schedule.   This Supplemental Brief expressly incorporates Appellant's Brief and Reply Brief previously filed with this Court.

## STATEMENT OF THE ISSUES

1.     Did the Bankruptcy Court err by requiring Murphy to show "truly exceptional circumstances" in order to establish "undue hardship"?

2.     Did the Bankruptcy Court err by requiring Murphy to in effect satisfy the Brunner test in order to establish "undue hardship"?

3.     Did the Bankruptcy Court err in finding that Murphy did not satisfy the "undue hardship" standard?

## STANDARD OF REVIEW

The question of what legal standard applies is reviewed *de novo*. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995) ("legal conclusion[s] drawn [are subject to] *de novo* review"); In re Bronsdon, 435 B.R. 791, 804 (B.A.P. 1st Cir. 2010) (Haines J., concurring). Further, this Court reviews *de novo* a Bankruptcy Court's "undue hardship" finding. See Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko), 515 F.3d 319, 324 (4th Cir. 2008); In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001); In re Bronsdon, 435 B.R. at 804–05; In re Kelly, 312 B.R. 200, 204 (B.A.P. 1st Cir. 2004). Accordingly, each of the three issues presented requires *de novo* review by this Court.

## STATEMENT OF THE FACTS

The facts of this case have been summarized at length by the Appellant and Appellee in their respective briefs, and are summarized only briefly herein.

Murphy is a 64-year-old married father of three. See Murphy v. Sallie Mae, Inc., No. 12-01003 (FJB), Proceeding Memorandum/Order dated Feb. 20, 2013 (the "Bankr. Ct. Op."), at 1. He is in good health and lives in Duxbury, Massachusetts. Murphy v. Educ. Credit Mgmt. Corp., 511 B.R. 1, 1 (D. Mass. 2014) (the "D. Ct. Op."), at *2. Between 2001 and 2007, Murphy took out twelve Federal Parent PLUS student loans in the initial principal amount of $220,765 to finance his three children's college educations. Appellant's Appendix (the "App.")

2

168; D. Ct. Op. at *2. All of the loans were provided under the Federal Family Education Loan Program ("FFELP"). Bankr. Ct. Op. at 1.

Thereafter, Murphy consolidated nine of his PLUS loans into two federally-funded consolidation PLUS loans. Id. On September 26, 2011, Murphy filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). At the time of trial in the Bankruptcy Court, the total outstanding balance of Murphy's student loans was $246,538.91, comprised of three non-consolidated PLUS loans and two consolidation loans. Id. All of the loans are now held by Educational Credit Management Corporation ("ECMC"), the Appellee in this case. Id. The interest rates on these loans vary from 4.25% to 8.5%. App. 181 [Exhibit P-18]. Currently, the minimum monthly payment on the loans exceeds $2,400. Bankr. Ct. Op. at 1.

At the time of trial, Murphy was over 62 years of age and had been unemployed and unable to find work since he lost his job in 2002. D. Ct. Op. at *2. Murphy has repaid over $60,000 in principal and interest payments on the loans. App. 169 [Exhibit P-13]. Beginning in April 2008, Murphy applied for, and received, a series of deferments on his loans, on account of unemployment and economic hardship. App. 178–79 [Exhibits P-15–P-16]. At the time of Murphy's petition, the loans were in an approved economic hardship deferment. Id.

Murphy and his wife operate at a monthly net loss (income minus expenses) of $3,854.  <u>See</u> App. 160 [Exhibit 6].  In 2010 and 2011, Murphy and his wife earned $13,220 and $13,224, respectively, consisting entirely of his wife's wages as a teacher's aide.  <u>Id.</u> at 162–165 [Exhibits P-8–P-9].  Murphy's home is underwater by at least $200,000.  <u>Id.</u> at 155 [Exhibit P-3].  At trial, Murphy testified that foreclosure proceedings are underway.  <u>Id.</u> at 236 [Transcript of Jan. 29, 2013 Bankruptcy Court Hearing (the "<u>Tr.</u>") 22:14].  In November 2002, Murphy had an IRA account valued at approximately $250,000,  <u>id.</u> at 254 [Tr. 40:13], but he has since liquidated it to repay his student loan debt and cover other necessary life expenses.  <u>Id.</u>

## <u>SUMMARY OF THE ARGUMENT</u>

In its decision below, the Bankruptcy Court erred in three respects.

<u>First</u>, the Bankruptcy Court erred by requiring that the debtor demonstrate "truly exceptional circumstances."  Congress imposed no such requirement in Section 523(a)(8), and the "totality of the circumstances" test imposes no such requirement either.

<u>Second</u>, insofar as it required a showing of extraordinary circumstances or a certainty of hopelessness, the Bankruptcy Court erred by in effect applying the <u>Brunner</u> test.  <u>Brunner</u>, an out-of-Circuit decision, was decided over two decades ago under very different circumstances, at a time when educational loans were

subject to automatic discharge after a statutory waiting period. Its application in modern circumstances should be rejected on statutory and policy grounds. Indeed, <u>Brunner</u> ordinarily is no longer applied by lower courts within this Circuit, and this Court should clarify that <u>Brunner</u> is not good law within this Circuit.

<u>Third</u>, the Bankruptcy Court erred in finding that Murphy did not meet his burden of proof to qualify for an undue hardship discharge of his student loan debt under Section 523(a)(8). Murphy satisifies the "totality of the circumstances" test, and no further showing is required. And even if <u>Brunner</u> were applied, judgment should not have been entered for the defendant.

## ARGUMENT

## I.    THE BANKRUPTCY COURT ERRED BY REQUIRING MURPHY TO SHOW "TRULY EXCEPTIONAL CIRCUMSTANCES" TO ESTABLISH AN UNDUE HARDSHIP.

The Bankruptcy Court applied the wrong legal standard when it required Murphy to demonstrate "truly exceptional circumstances" in order to qualify for an undue hardship discharge under Section 523(a)(8) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). <u>See</u> Bankr. Ct. Op. at 2 ("Undue hardship is generally found only in 'truly exceptional circumstances.'").[1] Congress imposed

---

[1] Similarly, the District Court concluded that undue hardship discharges are appropriate only in "truly exceptional circumstances." <u>See</u> D. Ct. Op. at *4 (citing <u>DelBonis</u>, 72 F.3d at 927).

5

no such requirement, nor have the courts imposed such a requirement through the "totality of the circumstances" test (the "totality test").

First, a requirement that the debtor show "truly exceptional circumstances" is not supported by the statute.  Section 523(a)(8) provides that "this title does not discharge an individual debtor from any debt . . . unless excepting such debt from discharge . . . would impose an *undue hardship* on the debtor and the debtor's dependents . . . ."  11 U.S.C. § 523(a)(8) (emphasis added).  Thus, while Congress indeed intended to impose a higher standard for discharge on student loan borrowers than other borrowers, see In re Pelkowski, 990 F.2d 737, 743 (3d Cir. 1993); In re Merchant, 958 F.2d 738, 740 (6th Cir. 1992) (citing policy balance between "fresh start" and need to preserve viability of loan program); In re Johnson, 218 B.R. 449, 451 (B.A.P. 8th Cir. 1998), it expressly specified "undue hardship" as that higher standard—not "truly exceptional circumstances."  See 11 U.S.C. § 523(a)(8).  By requiring a showing beyond what the statute specifies, the Bankruptcy Court disrupts the balance between competing policy principles struck by Congress.  Cf. Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks), 331 B.R. 18, 27–28 (Bankr. D. Mass. 2005) ("Requiring the debtor to present additional evidence of 'unique' or 'extraordinary' circumstances amounting to a 'certainty of hopelessness' is not supported by the text of § 523(a)(8).").

<u>Second</u>, the totality test, applied by courts within this Circuit to implement Section 523(a)(8), does not require a showing of "truly exceptional circumstances." The totality test asks a straightforward question: Can the debtor now, and in the foreseeable future, maintain a reasonable, minimal standard of living for himself and his dependents and still afford to make payments on his student loans? <u>In re Hicks</u>, 331 B.R. at 31. In answering this question, courts look to the following three factors: (i) the debtor's past, present, and reasonably reliable future financial resources; (ii) the reasonably necessary living expenses of the debtor and the debtor's dependents; and (iii) any other relevant facts or circumstances unique to the debtor's case. <u>In re Bronsdon</u>, 435 B.R. at 798.

The showing of "truly exceptional circumstances" is not an element of this test. The Bankruptcy Court's lone citation was to <u>In re Brondson</u>, 435 B.R. at 796–97 n.7, but that decision, while repeating the "truly exceptional circumstances" concept in a footnote, ultimately expressly *rejects* a requirement that the debtor show that its case is extraordinary or unique. The <u>Brondson</u> court first quotes the decision in <u>Hicks</u>, in which the <u>Hicks</u> court, criticizing the "<u>Brunner</u> test" (discussed <u>infra</u>), concludes: "The debtor need only demonstrate 'undue hardship.' . . . [W]hether or not this Court subjectively views the debtor's circumstances as 'unique' or 'extraordinary' is, in a word, overkill." <u>In re Brondson</u>, 435 B.R. at 799–800 (citing <u>In re Hicks</u>, 331 B.R. at 27–28). The

Brondson court then expressly agrees with this analysis.  In re Brondson, 435 B.R. at 800.  Courts applying the totality test routinely reject the imposition of any "exceptional circumstances" showing.  See In re Ayele, 468 B.R. 24, 32 (Bankr. D. Mass. 2012); In re Stevenson, 463 B.R. 586, 594–95 (Bankr. D. Mass. 2011), aff'd, 475 B.R. 286 (D. Mass. 2012), aff'd (July 22, 2013); Kopf v. U.S. Dep't of Educ. (In re Kopf), 245 B.R. 731, 744 (Bankr. D. Me. 2000).

Further, the origin of the phrase "truly exceptional circumstances" indicates that it was not intended to be an additional prerequisite.  Citation of the phrase in lower court decisions within the First Circuit is traced to DelBonis, 72 F.3d at 927, but in that case the First Circuit did not analyze or even consider the "undue hardship" question—much less purport to define or modify a judicial test applicable thereto.  In DelBonis, the primary issue facing the court was whether a federal credit union qualified as a "government unit" under Section 523(a)(8) of the Bankruptcy Code.  DelBonis, 72 F.3d at 930–31.  The court held that the credit union was a government unit, and remanded the case to the Bankruptcy Court.  Id. at 938.  DelBonis involved no discussion whatsoever of whether the debtor qualified for undue hardship.  See id.  Further, the passing reference made to "truly exceptional circumstances" was in any event derived from a District of Vermont Bankruptcy Court decision that based its decision on its interpretation of a statement made during a subcommittee hearing in the context of a different era and

statutory regime, as discussed more fully below.  See In re Lohman, 79 B.R. 576, 581 (Bankr. D. Vt. 1987).[2]  At the time Lohman was decided, student loans in repayment for more than five years were automatically discharged, and only loans in repayment for less than five years required a demonstration of undue hardship. See infra Part II-B.

Ultimately, Congress enacted no "truly exceptional circumstances" requirement, the totality test does not require it, and the DelBonis court had no intention of defining a judicial test for undue hardship.  By requiring "truly exceptional circumstances" to establish discharge, the Bankruptcy Court applied the wrong legal standard.

## II.    THE BANKRUPTCY COURT ERRED BY IN EFFECT IMPROPERLY SUBJECTING MURPHY TO THE BRUNNER TEST.

As noted above, the Bankruptcy Court stated that Murphy's circumstances must be "truly exceptional" to permit a discharge.  See supra Part I.  Such a showing has been required under the Brunner test, i.e. the alternate test used by some courts to implement the undue hardship standard.  See In re Hicks, 331 B.R. at 27 (explaining that the Brunner requirement of "additional extraordinary

---

[2] In Lohman, although the court conducted an undue hardship analysis (and concluded the debtor did not meet her burden), it required the debtor to show "exceptional circumstances" based upon its interpretation of statements made by one Congressman from Arkansas.  See id. at 581 (quoting statements made by Congressman Thornton before the House Subcommittee on Civil and Constitutional Rights).

circumstances" has "led some courts to require that the debtor show the existence of 'unique' or 'extraordinary' circumstances").[3]

The application of Brunner in the present day is problematic for a number of reasons, among them that the test imposes additional requirements that do not track the statute, and that the test was articulated in a very different context, both in terms of the statute and prevailing loan-forgiveness practices. Lower courts within this Circuit ordinarily have not applied Brunner, and to the extent there remains a question as to which test applies within this Circuit (Brunner or the totality test), the Court should clarify that Brunner is no longer applicable and the totality test applies.

**A.    Brunner's Additional Requirements Do Not Track the Statute and Are Otherwise Problematic.**

Articulated in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987), the Brunner test sets forth a tripartite test for undue hardship: (i) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (ii) that "additional circumstances" exist indicating that this state of affairs is likely to persist for a "significant portion" of the repayment period of

---

[3] For its part, the District Court, by concluding that Murphy's future is not "so bleak as to warrant a discharge," D. Ct. Op. at *5, in effect required a showing tantamount to a "certainty of hopelessness"—another aspect of the Brunner test, see infra Part II-A.

the student loans; and (iii) that the debtor has made "good faith" efforts to repay the loans. The three <u>Brunner</u> requirements are conjunctive—failing one will result in a court excepting the debt from discharge. <u>Goulet v. Educ. Credit Mgmt. Corp.</u>, 284 F.3d 773, 777 (7th Cir. 2002).

When compared to the totality test, <u>Brunner</u> in effect "imposes two additional requirements on the debtor that must be met if the student loans are to be discharged": (i) additional, "exceptional" circumstances amounting to a "certainty of hopelessness" (under the second <u>Brunner</u> prong); and (ii) "good faith" repayment efforts (under the third <u>Brunner</u> prong). <u>See</u> <u>In re Hicks</u>, 331 B.R. at 26. These additional requirements are problematic.

<u>First</u>, prong two of <u>Brunner</u> requires a "certainty of hopelessness"—in contravention of the statutory language. <u>See</u> <u>In re Hicks</u>, 331 B.R. at 27–28. The term "undue" is defined merely as "excessive" or "unwarranted." BLACK'S LAW DICTIONARY 1759 (10th ed. 2014). Congress could have selected a more draconian modifier for "hardship," such as "extreme" or "unconscionable." But it did not. The "certainty of hopelessness," therefore, is unsupported judicial gloss. As Judge Easterbrook has observed, "[i]t is important not to allow judicial glosses . . . to supersede the statute itself." <u>Krieger v. Educ. Credit Mgmt. Corp. (In re Krieger)</u>, 713 F.3d 882, 884 (7th Cir. 2013).

11

Second, prong three of Brunner, *i.e.*, "good faith" efforts to repay the loans, also is problematic. The statute does not mention good faith. See 11 U.S.C. § 523(a)(8). Moreover, the good faith requirement operates to require a debtor to prove a negative, that is, that he did not act in bad faith. Bronsdon, 435 B.R. at 800. Finally, as discussed below, the good faith requirement arises out of a policy concern that arose under a very different statutory context, and is problematic when applied to present circumstances in a forward-looking manner. See infra Part II-B.

### B. Brunner Does Not Reflect Subsequent Changes in the Statute and Loan-Forgiveness Practices.

The Brunner test was articulated under a different statutory context, *i.e.*, at a time when educational loans were automatically dischargeable after five years. See In re Kopf, 245 B.R. at 741 (explaining that "Brunner . . . has historical roots in the time when student loans were automatically rendered dischargeable in bankruptcy when they had been due and unpaid for five, later seven, years.").[4] In 1998, however—*i.e.*, subsequent to the decision in Brunner—Congress eliminated the automatic discharge provision, and made "undue hardship" the only exception to non-dischargeability. See Jesperson, 571 F.3d at 778. By removing the five-to-

---

[4] In 1990, Congress lengthened from five to seven years the period beyond which government-assisted student loans became automatically dischargeable. See Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 778 (8th Cir. 2009).

seven year period and asking courts to use their judgment by applying the undefined term "undue hardship," Congress evidenced an intent that Bankruptcy Court judges enjoy greater discretion when evaluating student loan discharge cases. See Fox v. Pa. Higher Educ. Assistance Agency (In re Fox), 163 B.R. 975, 978 (Bankr. M.D. Pa. 1993). More significantly, "undue hardship" became the only means to a discharge, with problematic implications for judicial tests such as Brunner, that had been intended to screen out those who were unjustified in seeking a rapid discharge before the statutory period had expired.[5]

The facts of Brunner itself highlight the disparity between its original purposes and its more problematic recent applications. In Brunner, the debtor was a graduate of a master's program—described as young, healthy and intelligent—who, having recently purchased an automobile, abruptly filed for bankruptcy and

---

[5] Brunner's "good faith" inquiry reflects this history, arising out of a public policy underlying Section 523(a)(8): "to forestall students, who frequently have a large excess of liabilities over assets solely because of their student loans, from abusing the bankruptcy system to shed those loans." 124 Cong. Rec. H. 11096, 95th Cong., 2d Sess., at 140 n.14 (daily ed. Sept. 28, 1978). Congress viewed the practice of filing bankruptcy to discharge student debt immediately upon graduation as "tantamount to fraud." In re Pelkowski, 990 F.2d at 743. When applied not as a retrospective criterion, but a forward-looking one, the "good faith" requirement has been criticized as inconsistent with the problem the Brunner court sought to solve. See In re Bronsdon, 435 B.R. at 806 ("The Brunner court was concerned about debtors who resorted to bankruptcy . . . without first making a good faith attempt at repayment. Flipping the test's historical 'good faith effort to repay' prong into the future is a misapplication."); In re Roth, 490 B.R. 908, 923 (B.A.P. 9th Cir. 2013) (good faith requirement is "of little utility in determining true undue hardship").

sought discharge of her student loans merely seven months after graduation.  In re Brunner, 46 B.R. 752, 753 (S.D.N.Y. 1985).  The debtor had made "virtually no attempt to repay," and did not request a deferment.  Id. at 758.  In deciding the case, the court noted the concerns of the Commission on Bankruptcy Laws of the United States (the "Commission") with respect to the "rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts."  Id. at 754 (citing Commission Report, House Doc. No. 93-137, Pt. 1, 93rd Cong., 1st Sess. (1973) at 140 n.14).

Applied in the modern context, however, the Brunner test leads to outcomes that are difficult to reconcile with its original purpose or Congressional intent.  In Robinson v. Educ. Credit Mgmt. Corp. (In re Robinson), 416 B.R. 275 (Bankr. E.D. Va. 2009), for example, the debtor, who suffered a life-threatening illness, had obtained a law degree pre-illness and consequently had law school loans.  Id. at 278.  Periodically she was was forced to live in homeless shelters and subsisted off of food stamps.  See id.  Applying Brunner, however, the court concluded that the debtor's loans could not be discharged.  Id. at 280–81 ("[B]eing diagnosed with cancer, without more, does not necessarily mean that the debtor cannot take advantage . . . [of] the excellent education she received.").[6]  Whatever its merits

_____

[6] See also In re Stebbins-Hopf, 176 B.R. 784, 788 (Bankr. W.D. Tex. 1994) (finding that elderly debtor, who suffered from nerve damage, arthritis, and bronchitis, and whose mother had cancer, daughter had epilepsy, and grandchildren

two decades ago, Brunner no longer implements Section 523(a)(8) in a manner consistent with Congressional intent.

More broadly, as Judge Pappas recently wrote for the Ninth Circuit's Bankruptcy Appellate Panel, when considered against the evolution of loan practices since Brunner was decided, the Brunner test simply "no longer reflects reality." In re Roth, 490 B.R. at 920 (Pappas, J.). Characterizing Brunner as "a relic of times long gone," Judge Pappas noted the "geometric increases" in public and private student loan debt since Brunner was decided. Id. at 921. Whereas the loan amounts at issue in the days of Brunner were "usually modest," today they are "mammoth." Id. at 922 (discussing the nearly $1 trillion in outstanding student loan debt, average student loan debt balance upon graduation of $25,000, and fact that 12 percent of borrowers now owe $50,000 or more in student loans). The totality test better fits the current environment than Brunner, because "in this new, different environment, in determining whether repayment of a student loan constitutes an undue hardship, a bankruptcy court should be afforded flexibility to consider all relevant facts about the debtor and the subject loans. But Brunner does not allow it." Id.

---

had chronic asthma, failed the second Brunner prong because "[s]he intentionally chose to help her family financially," and "[h]er situation [was] not so severe that there [was] a 'certainty of hopelessness'"). A similar result obtained in In re Brightful, where the court, applying the Brunner test, held that the debtor—a single mother who had been evicted from her home and suffered from "glaring psychiatric problems"—did not satisfy Brunner. 267 F.3d at 329–31.

Moreover, as Judge Pappas further observed, it is "increasingly common that the debtor seeking bankruptcy relief from student loan debt is not the student but, instead, a family member . . . who agreed to co-sign or guarantee the loans." Id. For this additional reason, the Brunner test—intended to screen out "abuse[s] by former students who sought to use bankruptcy as a vehicle to escape their educational loan debts shortly after graduation," see, e.g., In re Lohman, 79 B.R. at 580—fails to account for an entire class of debtors who borrowed funds for their children's benefit and made good faith repayment efforts over a period of years.

### C.    **The Totality Test is Superior.**

First articulated in Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003) (citing Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702, 704 (8th Cir. 1981)), the totality tests grants courts wide discretion to consider the peculiar facts and circumstances of each debtor's predicament.  The totality test elevates "fairness and equity" by requiring "each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy." In re Long, 322 F.3d at 554.  Unlike Brunner, the totality inquiry takes into account all factors relating to a debtor's ability to repay student loan debt on a case-by-case basis.  In re Andrews, 661 F.2d at 704.  Further, the totality analysis boils down to one simple and common-sense question: "Can the debtor now, and in the foreseeable future, maintain a reasonable, minimal

16

standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?"  In re Hicks, 331 B.R. at 31.  The test thus leads to a logical conclusion that matches Congressional intent: if the debtor's reasonable future financial resources cannot sufficiently cover repayment of the student loans while still allowing for a minimal standard of living, then the debt should be discharged.  In re Long, 322 F.3d at 554–55.

Put differently, the totality test balances the unique circumstances of a debtor's situation with legitimate Congressional concerns about abusive behavior by debtors.  In re Hicks, 331 B.R. at 24; Phelps v. Sallie Mae Loan Serv. Ctr. (In re Phelps), 237 B.R. 527, 534–35 (Bankr. D.R.I. 1999) (quoting Law v. Educ. Res. Inst., Inc. (In re Law), 159 B.R. 287, 292-93 (Bankr. D. S.D. 1993)); see also In re Savage, 311 B.R. 835, 838–39 (B.A.P. 1st Cir. 2004); In re Andresen, 232 B.R. 127, 140 (B.A.P. 8th Cir. 1999); Crowley v. U.S. Dep't of Educ. (In re Crowley), 259 B.R. 361, 365 (Bankr. W.D. Mo. 2001).

### D.    The Court Should Clarify that Brunner Does Not Apply Within This Circuit.

The vast majority of undue hardship decisions issued by lower courts within this Circuit over the past 20 years have applied the "totality" test.  See Sanborn v. Educ. Credit Mgmt. Corp. (In re Sanborn), 431 B.R. 5, 9 (Bankr. D. Mass. 2010); Taratuska v. Educ. Res. Inst., Inc. (In re Taratuska), No. 01-10361, 2010 WL

583952, at *6 (Bankr. D. Mass. Feb. 12, 2010); Fahrenz v. Educ. Credit Mgmt. Corp. (In re Fahrenz), No. 05-24660, 2008 WL 4330312, at *8 (Bankr. D. Mass. Sept. 17, 2008); Brunell v. Citibank (S.D.) N.A. (In re Brunell), 356 B.R. 567, 575–76 (Bankr. D. Mass. 2006); Paul v. Suffolk Univ. (In re Paul), 337 B.R. 730, 736 (Bankr. D. Mass. 2006); Gharavi v. U.S. Dep't of Educ. (In re Gharavi), 335 B.R. 492, 497 (Bankr. D. Mass. 2006); In re Hicks, 331 B.R. at 31–32; Bourque v. Educ. Credit Mgmt. Corp. (In re Bourque), 303 B.R. 548, 550 (Bankr. D. Mass. 2003); Lamanna v. EFS Servs., Inc. (In re Lamanna), 285 B.R. 347, 353 (Bankr. D.R.I. 2002); Dolan v. Am. Student Assistance (In re Dolan), 256 B.R. 230, 238 (Bankr. D. Mass. 2000); In re Kopf, 245 B.R. at 741; In re Phelps, 237 B.R. at 535. Only three decisions from within this Circuit—all from New Hampshire, two of which are authored by the same Bankruptcy Judge—have applied Brunner. See Gallagher v. Educ. Credit Mgmt. Corp. (In re Gallagher), 333 B.R. 169, 173 (Bankr. D.N.H. 2005); Grigas v. Sallie Mae Serv. Corp. (In re Grigas), 252 B.R. 866, 873–74 (Bankr. D.N.H. 2000); Garrett v. N.H. Higher Educ. Assistance Found. (In re Garrett), 180 B.R. 358, 362 (Bankr. D.N.H. 1995).

For the reasons set forth above, to the extent there remains a question as to what test applies, the Court should clarify that Brunner is not the law in this Circuit, and rule that the Bankruptcy Court, insofar as it effectively applied Brunner (or some variation of Brunner), applied the wrong legal standard.

## III.  THE BANKRUPTCY COURT ERRED IN FINDING THAT MURPHY HAS NOT DEMONSTRATED UNDUE HARDSHIP.

In concluding that Murphy "has not met his burden of proving that it would impose an undue hardship on him and his wife to except the student loans from discharge," Bankr. Ct. Op. at 2, the Bankruptcy Court erred.  Murphy qualifies for discharge under the totality test.  And even under <u>Brunner</u>, judgment should not have been entered for the defendant.

### A.  Murphy Has Satisfied His Burden of Proof to Demonstrate Undue Hardship Under the Totality Test.

To satisfy the totality test, Murphy must show that (i) his past, present, and reasonably reliable future financial resources, (ii) his and his dependents' reasonably necessary living expenses, and (iii) other relevant facts or circumstances unique to Murphy's case, prevent him from paying the student loans while still maintaining a minimal standard of living.  See <u>In re Bronsdon</u>, 435 B.R. at 798; <u>In re Kopf</u>, 245 B.R. at 739.  Murphy satisifies this test.

### 1.  Past, Present, and Reasonably Reliable Future Financial Resources.

Murphy's past, present, and reasonably reliable future financial resources are sparse.  The Bankruptcy Court found his testimony on this point "*completely credible*." Bankr. Ct. Op. at 1. (emphasis added).  Despite Murphy's diligent efforts to find employment, he has been unable to land a job—any job—for over

thirteen years.  He has exhausted a variety of job search methods, from networking with friends and colleagues, to responding to internet and newspaper job publications, to sending out mass mail applications.  App. 230 [Tr. 16:14–17:13].  He also looked at a broad range of positions, including one as a chauffeur.  Id. at 269 [Tr. 55:8].  Nevertheless, Murphy's efforts have been unsuccessful due to a combination of factors, including his age and the stigma of continued unemployment.  See id. at 232 [Tr. 18:4].  Furthermore, Murphy's wife is the household's sole breadwinner; her annual income working as a teacher's aide is only about $13,220 and is not enough to cover their living expenses.[7]  Murphy has not been able to pay his mortgage for years, and his home is currently in foreclosure proceedings.  See id. at 236 [Tr. 22:14].  These circumstances have been chronic over the last thirteen years and are likely to continue for the duration of Murphy's life.

In reaching his decision, the Bankruptcy Court placed disproportionate emphasis on the fact that Murphy was "previously a high earner." Id. at 279 [Tr. 65:1-2].  Accordingly, the Bankruptcy Court expressed confidence that Murphy will eventually be able to regain lucrative employment.   But the Bankruptcy Court's confidence is belied by the fact that over the course of the past thirteen years, Murphy has been unable to find *any* employment, let alone "high-

---

[7] Mrs. Murphy's income was $13,220 in 2010, $13,224 in 2011, and $13,224 in 2012. Id. at 270 [Tr. 56:19–57:7].

earning" employment.  For this reason, the Bankruptcy Court erred in stating that Murphy's "only support for his argument that he meets the undue hardship standard is that, under *current circumstances*, he simply cannot pay the loans back."  Bankr. Ct. Op. at 2 (emphasis added).  Murphy's argument has never been—and is not now—that the present fact of his unemployment justifies a discharge.  Rather, Murphy's case is based on *his reasonably reliable current and future* circumstances, which demonstrate that Murphy will be unable to regain gainful employment now *or in the future*.  See App. 232 [Tr. 18:4] (noting the "stigma of being unemployed" is harming opportunities for future employment); id. at 269 [Tr. 55:8-9] (Murphy was denied position as a chauffeur driver); id. at 271 [Tr. 57:10] (future household AGI expected to be about the same as 2011 AGI of $13,224).  Furthermore, the Bankruptcy Court's factual finding in this respect contradicts other portions of the same opinion.  See Bankr. Ct. Op. at 1 (finding Debtor "completely credible in [his] testimony" that he is not considered for jobs due to his age); id. at 2 (finding "Debtor and Wife are unlikely to increase their income in the short run").  The Bankruptcy Court's reasoning is puzzling indeed: on the one hand, the Bankruptcy Court found that Murphy is unlikely in the future to improve his current meager earnings, while on the other, the Bankruptcy Court

21

anticipates that Murphy's financial circumstances will improve.  On this record, the Bankruptcy Court's ruling was in error.[8]

## 2.  **Reasonably Necessary Living Expenses.**

The record establishes that Murphy's reasonably necessary monthly expenses of $4,965 exceed his monthly income by $3,854.  See App. 160–61 [Exhibits P-6–P-7].  The Bankruptcy Court found that Murphy's demonstrated expenses "plainly indicate that the Debtor is operating at a significant monthly deficit."  Bankr. Ct. Op. at 1.  Murphy's monthly payments for student loans alone exceed $2,400 per month.  Id.  Even accounting for Murphy's expected social security insurance ("SSI") income at age 66, his projected monthly income will remain insufficient to cover his expenses.  See App. 167 [Exhibit P-10].  The record

---

[8] The District Court also made factual and legal errors which led it incorrectly to affirm the Bankruptcy Court.  First, similar to the Bankruptcy Court, the District Court made an error of law by stating that undue hardship discharges are only warranted under "truly exceptional circumstances."  D. Ct. Op. at *5.  As discussed above, this is an incorrect statement of law.  Second, by concluding that Murphy's future is not "so bleak as to warrant a discharge," id., the District Court improperly shoehorned into the totality test the requirement that a debtor must also show what, in effect, amounts to a "certainty of hopelessness."  As also discussed above, this, too, reflects the incorrect legal standard.  Third, in finding that Murphy's circumstances are not "so bleak," the District Court cited In re Burkhead, 304 B.R. 560, 566 (Bankr. D. Mass. 2004).  D. Ct. Op. at *5.  But the Burkhead court, while purporting to adopt the totality test, considered whether the debtor made "good faith" efforts to repay the loan, and also whether the debtor filed bankruptcy "for the sole reason" of evading student loan debt.  304 B.R. at 565.  As discussed supra, the totality test does not ask whether a debtor acted in good faith or whether the debtor filed bankruptcy "for the sole reason" of escaping student debt.

demonstrates that Murphy's current and projected future income is not sufficient to pay his reasonably necessary living expenses, and thus, it would be an "undue hardship" to require him to repay his student loans.

### 3. Other Relevant Facts and Circumstances.

The totality test requires courts to consider "any other relevant facts and circumstances surrounding each particular case." See In re Long, 322 F.3d at 554; In re Hicks, 331 B.R. at 31 (evaluating the debtor's income and expenses, health, age, education, number of dependents, other personal or family circumstances, required monthly payment, impact of the general discharge, and the debtor's ability to find a higher-paying job or cut expenses).  In evaluating Murphy's ability to repay his loans, this Court should take into account Murphy's unique position, given his age.  At age 64, Murphy has few years remaining (if any) in the workforce.  App. 275 [Tr. 61:3-6].  He testified that the best-case income he could generate "wouldn't even come close to retiring $247,000 of outstanding loans." Id. at 275 [Tr. 61:5-6].  Murphy's age affects not only his time remaining in the workforce (which is minimal), but also his ability to secure employment in that limited time frame.  As Murphy testified, searching for employment in his sixties is not "seen as an asset." Id. at 231 [Tr. 17:22].[9]

---

[9] Furthermore, the Bankruptcy Court placed undue weight on Murphy's prior position as an executive of a small company. The Bankruptcy Court

Moreover, Murphy has made diligent efforts to find work and repay his loans. To date, Murphy has paid over $60,000 of the student loan debt. <u>See</u> Bankr. Ct. Op. at 1. In fact, *all* of Murphy's required loan payments have been made on time or have had an approved deferment in place. App. 255 [Tr. 41:5-14]. In 2008, in order to meet his obligations, Murphy liquidated the funds in his Individual Retirement Account ("IRA"), which had a balance of $251,095. <u>Id.</u> at 234 [Tr. 20:20]. His IRA account is now empty. <u>See id.</u> at 254 [Tr. 40:11-14]. Murphy has made every possible effort to find employment and repay his loans, without success. These facts show that Murphy satisfies the third prong of the totality test.

The Bankruptcy Court's analysis of the third totality factor was erroneous in three other respects.

<u>First</u>, Judge Bailey opined that "essentially we're looking at *mostly health issues* in order to find non-dischargeability." <u>Id.</u> at 278 [Tr. 64:9-11] (emphasis added). An accurate statement of the law is that a debtor's health is but one of many non-dispositive factors courts use in their analysis. <u>See In re Hicks</u>, 331

---

mischaracterized Murphy's prior job as that of "President and CEO of a major corporation." Bankr. Ct. Op. at 1. In reality, Murphy was president of a small local manufacturing company. App. 229 [Tr. 15:12-18]. In fact, his prior experience has been detrimental to his job search. As Murphy testified, potential employers are suspicious of candidates who have prior executive experience. <u>Id.</u> at 232 [Tr. 18:10].

B.R. at 31. The Bankruptcy Court's implicit requirement that Murphy demonstrate a health ailment is an error of law.

Second, the Bankruptcy Court erred in finding it "significant" that Murphy has yet to apply for ECMC's Income Contingent Repayment Plan ("ICRP").[10] Bankr. Ct. Op. at 2. Although a debtor's eligibility for ICRP may be *one* factor taken into consideration, it is not "significant" and certainly is not dispositive. See In re Bronsdon, 435 B.R. at 801 ("[A] debtor's eligibility to participate in the ICRP may be considered by the court when applying the totality of the circumstances test, but it is not determinative."); In re Smith, 499 B.R. 55, 64 (Bankr. D. Mass. 2013); In re Korhonen, 296 B.R. 492, 496 (Bankr. D. Minn. 2003). ICRP eligibility is only one factor among many because courts recognize that ICRP typically triggers "longer term debt and tax consequences" to the debtor. In re Bronsdon, 435 B.R. at 802. In many cases, the ICRP is no cure for a debtor's ills because it merely "exchanges a nondischargeable student loan debt for a

---

[10] The William D. Ford Direct Loan repayment program, set forth at 34 C.F.R. 685, §§ 685.100–685.402 (the "Ford Program"), provides for the consolidation of eligible student loans as well as the ICRP. The ICRP has a maximum repayment term of 25 years. See 34 C.F.R. 685.209(b)(3)(iii)(A). If, at the end of the 25-year term, there is a loan balance remaining then ICRP requires that the remaining loan balance be canceled. See 34 C.F.R. 685.209(b)(3)(iii)(D). The monthly payment amount under the ICRP is based upon the borrower's annual adjusted gross income ("AGI"), the total amount borrowed, and family size.

nondischargeable tax debt." Id.[11]  Indeed, this explains why courts have found undue hardship in cases where a debtor has not enrolled in ICRP.  See In re Alderete, 308 B.R. 495, 507 (B.A.P. 10th Cir. 2004); In re Bronsdon, 435 B.R. at 804; In re Fahrenz, 2008 WL 4330312, at *10 ("[T]he existence of a zero payment under the ICRP does not generally obviate the need for undue hardship discharges in bankruptcy."); In re Ablavsky, 504 B.R. 709, 722 (Bankr. D. Mass. 2014).  More important, several courts have also found undue hardship where the ICRP provides for *no* monthly payment *and* the cancellation of any remaining debt after twenty-five years.  In re Brown, 378 B.R. 623, 629 (Bankr. W.D. Mo. 2007); In re Long, 322 F.3d at 554; In re Korhonen, 296 B.R. at 497 (finding undue hardship notwithstanding that debtor could enroll in ICRP with no monthly payment and forgiveness of any remaining debt after twenty-five years); In re Ford, 269 B.R. 673, 677–78 (B.A.P. 8th Cir. 2001).  By finding it "significant" that Murphy has not explored an ICRP program, the Bankruptcy Court erred.[12]

---

[11] This is so because the Internal Revenue Code, 26 U.S.C. § 61, provides that cancellation of indebtedness is taxed as income in the year of cancellation.

[12] In particular, courts have determined that where ICRP is unlikely to ever require the debtor to make a payment, the law should not impose negative consequences for failing to enroll in such program.  See In re Roth, 490 B.R. at 913; In re Bronsdon, No. 07-14215, 2010 WL 147798, at *2 (Bankr. D. Mass. 2010) (holding that "shackling" the debtor to enroll in a zero-payment ICRP would be a "pointless exercise").  This is because the law does not require parties to engage in futile acts.  Ohio v. Roberts, 448 U.S. 56, 74 (1980), abrogated on other grounds, Crawford v. Washington, 541 U.S. 36 (2004).  Here, the law should not impose negative consequences on Murphy's decision not to enroll in the ICRP,

Third, the Bankruptcy Court erred by not giving due consideration to Murphy's age. Courts recognize that debtors at or near retirement age cannot reasonably be expected to work into their seventies and eighties to repay student loans. See In re Gordon, No. 07-68049, 2008 WL 5159783, at *8 (Bankr. N.D. Ga. Oct. 10, 2008) (62-year-old parent granted discharge of loans incurred for her children's education); In re Hamilton, 361 B.R. 532, 559 (Bankr. D. Mont. 2007) (retired debtor who borrowed student loans for children met undue hardship standard); In re Williams, 301 B.R. 62, 79 (Bankr. N.D. Cal. 2003) (husband and wife debtors, aged 54 and 53, respectively, qualified for undue hardship because members of their industry typically retired by age 60). At age 64, it is unlikely Murphy will be able to find employment lucrative enough to overcome his debt. See In re Green, No. 05-11461, 2006 WL 2061494, at *7 (Bankr. D. Mass. July 24, 2006) (discussing that debtor's 61-year-old age was "hindrance" in job search).

Murphy plainly is not the "deadbeat" college graduate Congress wanted to address through the student loan laws. A father of three, Murphy was 50 years old when he took out his first student loan for his children's college education. See D. Ct. Op. at *2. Nor is he about to embark on a lucrative career. See In re Long, 322

---

especially where, based on Murphy's current income and his inability to find work, he would likely never be required to make a payment. See App. 272 [Tr. 58:3-8]. As in Bronsdon, Murphy's circumstances demonstrate that requiring him to enroll in the ICRP would be a "pointless exercise." In re Bronsdon, 2010 WL 147798, at *2.

F.3d at 554 (through student loan laws, "Congress intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligations from doing so."). This Court should reject ECMC's implicit demand that Murphy work well into his eighties.

### B.    Murphy Also Satisfies The Brunner Test For Undue Hardship.

While Brunner should not apply, see supra Part II, even under Brunner, judgment should not have been entered for defendant.

First, Murphy cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay his student loans to ECMC. Brunner, 46 B.R. at 756. The first Brunner prong examines a debtor's income and expenses at the time of trial. See United Student Aid Funds, Inc. v. Pena, 155 F.3d 1108, 1110 (9th Cir. 1998). The basic purpose of the first Brunner prong is to ensure that, after debtors have provided for their basic needs, they do not allocate discretionary income to the detriment of student loan creditors. In re Mitcham, 293 B.R. 138, 144 (Bankr. N.D. Ohio 2003); In re Neeson, No. 07-20604, 2008 WL 379699, at *5 (Bankr. W.D. Mo. Feb. 12, 2008) (debtor's demonstrated need to draw on credit card to pay for daily necessities showed lack of excess income to pay toward student loan). The uncontroverted record demonstrates that, based on current income and expenses, Murphy cannot afford to make any payments on the

loans. Murphy operates at a significant monthly deficit. Bankr. Ct. Op. at 1. He simply has no allocable discretionary income.

Second, Murphy's "additional circumstances" make it more likely than not that his current state of affairs will continue for the remainder of his loans' repayment term. In re Pena, 155 F.3d at 1111. Under the second prong of the Brunner test, courts require a debtor to establish a "certainty of hopelessness" in order to demonstrate that the debtor's state of affairs is likely to persist for a significant portion of the repayment period of the student loans. In re Frushour, 433 F.3d 393, 401 (4th Cir. 2005) (under second Brunner prong, certainty of hopeless is required); In re Oyler, 397 F.3d 382, 386 (6th Cir. 2005) (same); In re Spence, 541 F.3d 538, 544 (4th Cir. 2008) (same). Murphy satisfies the "certainty of hopelessness" standard. In assessing "additional circumstances" under Brunner, courts consider several factors including (i) whether a debtor displays a lack of marketable job skills, (ii) whether a debtor has maximized her income potential, (iii) whether there are a limited number of years remaining in the debtor's work life to allow repayment of the loan, (iv) the debtor's age, and (v) a debtor's lack of assets that could be used to pay the loan. In re Nys, 446 F.3d 938, 947 (9th Cir. 2006). Courts have found that a debtor's advanced age can be determinative insofar as the debtor has a limited future time frame in which to work. In re Brown, No. 05-4470, 2007 WL 1747135, at *4 (Bankr. N.D. W. Va. June 15,

2007) (granting a discharge for 50-year-old debtor earning $8.50 per hour as telemarketing customer service representative who had reached maximum earning capacity, did not earn enough to repay loan and appeared to be trapped in "cycle of poverty"); In re Young, 225 B.R. 312, 315 (Bankr. E.D. Pa. 1998) (age was "indeed a factor" in determining that debtor satisfied second Brunner prong).

Murphy's additional circumstances satisfy the second Brunner prong. Despite diligent efforts over the thirteen years since losing his last job, Murphy has not been able to find gainful employment. Murphy was recently unable even to secure an interview for a job as a chauffeur, despite his education and experience. App. 269 [Tr. 55:8-9]. The combination of Murphy's age (64 years old), the thirteen year gap since his last period of employment, and his demonstrated inability to find a job support that, as in Krieger, here "[t]here is no reason to think that a brighter future is in store[.]" See Krieger, 713 F.3d at 884. What is more, Murphy owns no assets and has negative home equity, see App. 234 [Tr. 20:3-6], facts implicating the "cycle of poverty" prinicple identified by the Brown court. In re Brown, 2007 WL 1747135, at *4.

Third, there can be no question that Murphy has made a good faith effort to repay his loans. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." In re Mason, 464 F.3d 878, 884 (9th Cir. 2006). Courts also consider whether the debtor has made any

payments on the loan prior to filing for bankruptcy, In re Jorgensen, 479 B.R. 79, 89 (B.A.P. 9th Cir. 2012), the timing of the debtor's attempt to have the loan discharged, In re DeGroot, 339 B.R. 201, 214 (D. Or. 2006), and whether the debtor's financial condition resulted from factors outside of his reasonable control, In re Birrane, 287 B.R. 490, 500 (B.A.P. 9th Cir. 2002). Courts may also consider the degree to which a debtor has cooperated with his lenders, by, for instance, pursuing and securing a deferment on the loan obligations prior to filing for bankruptcy. See Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys), 356 F.3d 1302, 1308 (10th Cir. 2004).

Murphy's good faith is readily apparent. First, Murphy has made sizable and timely pre-petition payments on the loans—the Bankruptcy Court found that Murphy has made over $60,000 of payments on the loans and "made an effort to pay the loans when he could." Bankr. Ct. Op. at 1; App. 249 [Tr. 35:14]. Murphy even took the extreme step of liquidating his IRA account to repay the loans. See App. 254 [Tr. 40:13]. Second, Murphy has applied for, and received, several deferments and forbearances on the loans. Id. at 255 [Tr. 41:5-14]. Accordingly, Murphy's loans never fell into default. Third, Murphy's attempt to discharge the student loans came several years after they first went into repayment. Accordingly, this case does not present the proverbial "rush to the courthouse." In

re Roth, 490 B.R. at 919.  As a result, Murphy also satisfies even the strict Brunner test.

## CONCLUSION

For the foregoing reasons, Murphy respectfully requests that the decision of the Bankruptcy Court be reversed and Murphy's student loans be discharged in full under Section 523(a)(8) of the Bankruptcy Code.

Respectfully submitted,

*/s/ Steven D. Pohl*
Steven D. Pohl, Esq. (Bar #73801)
Brown Rudnick LLP
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
spohl@brownrudnick.com

Dated: July 22, 2015

## CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 32(a)(7)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: (1) this brief contains 7,939 words excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii); and (2) this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14 point proportionally spaced using Times New Roman font.

/s/ Steven D. Pohl
Steven D. Pohl, Esq. (Bar #73801)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of July, 2015, this document was filed through the Electronic Case Filing system, and that copies will be sent electronically to the registered participants identified on the Notice of Electronic Filing:

Adam Clinton Trampe
Direct: 651-325-3308
Educational Credit Management Corp.
1 Imation Place, Bldg 2
Oakdale, MN 55128

John F. White
Direct: 617-328-5600
Lipman & White
171 Rockland Street, Ste 201
Hanover, MA 02339

Richard L. Blumenthal
Direct: 617-527-1150
Silverman & Kudisch PC
1320 Centre Street, Suite 203
Newton, MA 02459

Nadine Peters
Direct: 202-637-6572
Khang V. Tran
Direct: 202-637-6528
Hogan Lovells US LLP
555 13th St NW
Washington, DC 20004-1109

Arne Duncan
US Dept of Education
General Counsel
400 Maryland Avenue
Washington, DC 20202-0000

/s/ *Steven D. Pohl*
Steven D. Pohl, Esq. (Bar #73801)